# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FASTENERS FOR RETAIL, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 11 C 2164 |
| ) | |
| GERALD ANDERSEN and ) | |
| K INTERNATIONAL INC., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Fasteners for Retail, Inc. (FFR) has sued K International (KI) and Gerald Andersen. FFR has asserted claims against KI for patent infringement, false advertising, consumer fraud, unfair competition, and misappropriation of trade secrets. FFR also asserts the latter claim against Andersen. Andersen is a former senior FFR sales executive. FFR terminated Andersen's employment in November 2009. Andersen went to work for KI about a year later, in November 2010. FFR alleges that KI has assigned Andersen to market the accounts he managed for FFR and that he is using FFR's confidential information to advance his own and KI's interests.

FFR brings its has used misappropriation claim (Count 5) against Andersen and KI under the Illinois Trade Secrets Act, 765 ILCS 1065/3 & 4. In that claim, FFR alleges that it has taken extensive steps to prevent disclosure and use of its confidential information concerning customers, sales strategies, pricing, costs, and customer preferences and that it will suffer irreparable injury if this information is used by or

disclosed to others. FFR alleges that Andersen had access to this information by virtue of his position at FFR. The parties agree that Andersen was subject to a written employment agreement while employed at FFR. The agreement required him to keep confidential FFR's trade secrets and confidential information, prohibited him from taking any materials from FFR, and required him to return all such materials to FFR on termination of his employment. According to FFR, Andersen retained or copied trade secrets and confidential information without authorization. FFR alleges that when he went to work for KI, Andersen took essentially the same job that he held with FFR, as sales executive responsible for customers in the western U.S. FFR contends that Andersen has attempted to divert his former FFR customers to KI and has done so using FFR samples and price lists, while representing that KI can sell the same or similar products at lower prices. It also alleges that he has used and will continue to use FFR's confidential information to his and KI's advantage.

Andersen has moved to dismiss Count 5. He contends that he is not subject to personal jurisdiction here; that venue is improper here; and that the claim is barred by a release in a settlement agreement that he entered into with FFR following litigation in 2010.

### Discussion

**1.   Personal jurisdiction**

On a motion to dismiss for lack of personal jurisdiction, factual disputes are resolved in the non-moving party's favor. *See, e.g., Purdue Research Fdn. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). FFR has established *prima*

*facie* that this Court has personal jurisdiction over Andersen. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2001). He went to work for KI, which is headquartered in this district, and there is evidence that he has solicited certain of his former FFR customers that have Illinois stores or subsidiaries in Illinois. There is also evidence that Andersen regularly sends information to KI in Illinois. This information included an FFR sales presentation and FFR sales figures.

In sum, there is sufficient evidence to establish *prima facie* that Andersen disclosed FFR's trade secrets in Illinois and caused harm to FFR in this state by soliciting its Illinois customers. This amounts to commission of a tortious act in Illinois, which confers a court in this state with jurisdiction over him for claims like FFR's that arise (at least in part) from those acts. *See* 735 ILCS 5/2-209(a)(2). In addition, because there is evidence that Andersen purposefully directed his activities toward Illinois; Illinois has a significant interest in remedying tortious acts alleged to have taken place in this state; and FFR's claim against Andersen is intertwined with at least one of its claims against KI, personal jurisdiction over which is unquestioned, the exercise of jurisdiction over Andersen here comports with the principles of due process. *See generally Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010).

The Court is unpersuaded by Andersen's contention that the "fiduciary shield" doctrine insulates him from the exercise of jurisdiction here. FFR has established *prima facie* that in committing the allegedly tortious acts, Andersen was acting, at least in significant part, on his own behalf and to further his own interests. The Court is likewise unpersuaded by Andersen's argument, made only in his reply brief (and thus likely

forfeited), that a release of claims in his settlement agreement with FFR arising from a prior lawsuit means that Andersen's Illinois contacts do not "count" for purposes of personal jurisdiction. The Court notes that Andersen has cited no authority supporting this contention.

**2.   Venue / forum selection clause**

Andersen's next challenge is to venue. There is no question that venue, as a statutory matter, is appropriate in this district as to Andersen. A substantial part of the events giving rise to the claim occurred here, as the Court has just described. *See* 28 U.S.C. § 1391(a).

Andersen argues that the only appropriate venue for the case is in a federal or state court in Cuyahoga County, Ohio, by virtue of a forum selection provision in his employment agreement with FFR. The provision states that

> [i]f a proceeding or claim relating or pertaining to this Agreement is initiated between either party hereto, such proceeding or claim shall and must be filed in any state or federal court located in Cuyahoga County, Cleveland, Ohio, and this Agreement and such proceeding or claim shall be governed by and construed under Ohio law, without regard to conflict of laws principles.

Motion to Dismiss, Ex. 3 ¶ 10.9.

Under *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), a request to enforce a contractual forum selection term is treated as the equivalent of a request to transfer the case to the selected forum pursuant to 28 U.S.C. § 1404(a). *Id.* at 29. Under section 1404(a), the Court considers the convenience of the parties and the witnesses and the interests of justice. A forum selection provision is a significant factor in this analysis, but it is not dispositive. *Id.* at 29-31. That said, a party that previously

4

agreed to litigate disputes in a particular forum gives up the right to assert its own inconvenience as a reason for transfer away from the contractually selected forum. *See Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989). It follows that a party like FFR that contractually chose a forum other than the one in which it has filed suit has given up the right to assert its own inconvenience as a reason not to transfer the case to the contractually selected forum.

FFR is headquartered in Ohio; Andersen lives in Utah. It would be rather difficult for Andersen to sustain the proposition that litigating this case in Cleveland would more convenient to him than litigating in Chicago. Indeed, the forum selection term likely was inserted into the employment agreement for the convenience of FFR – though, as noted above, FFR's convenience is a factor the Court does not consider at this point.

There is a good chance that some witnesses, either current or former FFR employees, are located in Ohio. Andersen, however, has made no effort to identify any such persons. Speculation is no substitute for an actual showing in this regard. *See, e.g., Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009). In any event, the Court is entitled to assume that FFR will cause witnesses within its control – i.e., its current employees – to appear at trial. *See, e.g., First Nat'l Bank v. El Camino Rest., Ltd.*, 447 F. Supp. 2d 902, 913 (N.D. Ill. 2006). Thus convenience of any Ohio-based FFR witnesses is not a significant factor in the analysis. In addition, the Court will entertain reasonable requests by Andersen to require FFR to bring to Illinois for deposition witnesses it employs whose depositions are reasonably necessary for Andersen's preparation on the claim against him.

The interests of justice, in the Court's view, weigh strongly in favor of allowing the

case to remain in this district. FFR has asserted its misappropriation claim against both Andersen and KI. It is overwhelmingly unlikely that FFR could obtain jurisdiction over KI in Ohio regarding that claim or that venue as to KI would be proper there. Thus were the Court to enforce the FFR-Andersen forum selection provision according to its terms, FFR would be forced to litigate a single claim in two separate forums. The public interest in judicial economy counsels strongly against a ruling that would require such a result.

That would be the end of the discussion but for the fact that in his reply brief, Andersen argues that FFR should be barred from contesting enforcement of the forum selection provision by virtue of the doctrine of judicial estoppel. The earlier suit between Andersen and FFR was an action that Andersen filed in Utah. Andersen has provided very little information regarding the claims he asserted in that case. It is reasonable to believe, however, that he claimed some sort of a breach of contract. FFR moved to dismiss, arguing that the lawsuit had to be filed in Ohio based on the forum selection term in Andersen's employment agreement. A state court judge in Utah agreed and dismissed the case for improper venue. Andersen then refiled it in Ohio state court.

Though Andersen's argument based on the forum selection provision has been available to him from the outset of this lawsuit, he did not assert it in his opening brief but instead waited until his reply, when FFR had no chance to respond. The argument was therefore forfeited. "Arguments raised for the first time in a reply brief are waived." *James v. Sheahan*, 137 F.3d 1003, 1008 (7th Cir. 1998). "The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an

opportunity to brief those new issues." *Wright v. United States*, 139 F.3d 551, 552 (7th Cir. 1998).

Forfeiture aside, the Court does not believe that the doctrine of judicial estoppel precludes FFR from arguing against enforcement of the forum selection term in the present case. Under that doctrine, "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted). All of those considerations appear to apply here. But "[b]ecause the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." *Id.* at 751 (internal quotation marks and citation omitted).

This is an appropriate case for the Court to exercise its discretion so as not to preclude FFR from arguing against application of the forum selection provision in the present case. If FFR had filed the present suit solely against Andersen, the Court would have no hesitation in concluding that FFR would be estopped from arguing against transfer to Ohio. But FFR filed this suit against both Andersen and KI. And as noted earlier, it is virtually certain that FFR would be unable to obtain jurisdiction over KI in Ohio. Thus strict application of the doctrine of judicial estoppel would require litigation of the same claim against two defendants in two separate forums at the same time. This would impose unnecessary costs on the judicial systems of both jurisdictions and would create a risk of inconsistent decisions, without any significant countervailing

benefits.

For these reasons, the Court declines to dismiss FFR's claim against Andersen based on improper venue.

**3.      Effect of release**

Finally, Andersen seeks dismissal of the claim against him pursuant to a release contained in the settlement agreement that he entered into with FFR to conclude the earlier suit he filed against the company. The agreement is dated November 19, 2010 and is entitled "Settlement Agreement and Release of All Claims." Andersen Reply, Ex. 1. It recites that Andersen filed suit against FFR in Ohio and that "[t]he parties have reached an agreement in full and final satisfaction of all claims which were or could have been asserted in the Lawsuit." *Id.*, p. 1 (Recitals). The agreement provided for payment of a sum of money to Andersen in return for dismissal of that lawsuit.

The language on which Andersen relies in seeking dismissal of FFR's trade secret misappropriation claim in the present lawsuit is contained in the following term of the settlement agreement:

> 3.(b)  FFR hereby agrees to release and forever discharge Andersen from any and all claims of any kind which FFR now has, has had or may hereafter have, resulting from Andersen's employment with FFR.

*Id.* ¶ 3(b). Andersen argues that FFR's present claim arises from his employment and is thus barred by the release.

The settlement agreement states that it is to be "construed and enforce in accordance with the laws of the State of Ohio." *Id.* ¶ 9. In the Court's view, a basic principle of Ohio law makes dismissal of FFR's claim inappropriate, at least on a motion

8

to dismiss for failure to state a claim under Rule 12(b)(6). Though broadly-worded releases are generally construed in Ohio to include all prior conduct between the parties, even if its scope is unknown to the releasor, it is "a well-recognized rule that when a release is so general that it includes claims which were not within the contemplation of the parties when it was executed, the release will not bar recovery of such claims." *Thayer v. Diver*, No. L-07-1415, 2009 WL 1167888, at *10 (Oh. App. May 1, 2009). In such a case, the parties' intent is to be resolved by the trier of fact. *Id.*

There is no basis in the record to believe that any claims regarding Andersen's alleged misappropriation of trade secrets were in FFR's contemplation at the time it entered into the settlement agreement. Indeed, from the language of the settlement agreement, it appears to have been aimed at resolving the prior lawsuit, not at wiping out any ongoing obligations in Andersen's employment agreement with FFR or claims that might be grounded wholly or partly in the confidentiality obligations in that agreement. In sum, the Court concludes that Andersen is not entitled to dismissal of count five for failure to state a claim based on the release in his settlement agreement with FFR.

**Conclusion**

For the reasons stated above, the Court denies defendant Andersen's motion to dismiss count five of the complaint [# 27] and directs Andersen to answer that claim by no later than September 13, 2011.

                                                                                    _____
                                                                                    MATTHEW F. KENNELLY
Date: August 30, 2011                                         United States District Judge