**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **FASTENERS FOR RETAIL, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 11 C 2164** |
| | ) | |
| **GERALD ANDERSEN and** | ) | |
| **K INTERNATIONAL INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Fasteners for Retail, Inc. (FFR) has sued K International (KI) and Gerald

Andersen.  FFR asserts claims against KI for patent infringement, false advertising,

consumer fraud, unfair competition, and misappropriation of trade secrets.  FFR also

asserts the latter claim against Andersen.  KI asserts counterclaims of false patent

marking, false advertising, unfair competition, and deceptive business practices.  FFR

has moved to dismiss KI's false marking claim.  For the reasons stated below, the Court

grants FFR's motion in part and denies it in part.

**Background**

The Court accepts the allegations in KI's third amended counterclaim true for

purposes of the motion to dismiss.  *See Hallinan v. Fraternal Order of Police of Chi.*

*Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).

FFR and KI are competitors that manufacture products used in retail shelving

and displays.  To market its products, FFR distributes a catalog to customers and potential customers and also makes the catalog available online.  FFR states that its product catalog "is nearly 600 pages and contains thousands of products, many of which are covered by a variety of different patents."  FFR Mem. in Support of M. to Dismiss at 2.  More than 300 of these products, however, were falsely marked as patented or patent pending in either the 2011 catalog or on the website.  In its counterclaim and attached exhibits, KI identifies products in the FFR catalog that were marked as patented or patent pending even though "they had never been patented, the patents had expired, the patent applications had been abandoned, and/or the patents had never issued."  KI 3rd Am. Counterclaim ¶ 28.[1]

KI states, "[u]pon information and belief," that FFR has a marketing department that spends a substantial portion of its time preparing each annual version of the catalog.  *Id.* ¶ 19.  The marketing department decides whether to mark each product in the catalog as patented or patent pending.  *Id.*  The marketing department is informed each year which products are covered by patents, which products are covered by patent applications, and which products are covered by patents that have expired.  *Id.* ¶ 20.  FFR sales staff also attend quarterly sales meetings where the expirations of patents and strategies to promote patented products are discussed.  *Id.* ¶ 21.  Because of all these facts, KI asserts that "FFR's management and sales persons knew or should have known" when patents covering their products had expired.  *Id.* ¶ 22.

---

[1] KI identifies some examples of falsely marked products in the body of its counterclaim but lists the majority of the falsely marked products in attached exhibits A and DD.

KI alleges that instead of accurately marking its products, "FFR sought to gain a competitive advantage by deceiving competitors into believing that they could not manufacture these products without 'infringing' upon FFR's 'patent rights.'" *Id.* ¶ 27. Beyond the inaccuracy of FFR's patent statements, KI makes additional allegations to support its contention that FFR intended to deceive its customers and competitors and was not merely negligent. For example, in its 1996 catalog, FFR printed the specific patent number for its SuperGrip Shelf Channel Sign Holders in the catalog. KI Ex. C. The patent expired in 2003. In 2011, FFR's catalog and website simply described the SuperGrip products as patented and did not provide a patent number. KI Exs. D–E. KI claims that FFR no longer displays patent numbers to make it difficult for competitors to determine whether a particular unexpired patent covers the product. KI 3rd Am. Counterclaim ¶ 17.

An additional example that KI provides is the description of another SuperGrip product, the "119 SuperGrip Flush Sign Holder for Perforated Shelves." In its 2003 catalog, FFR identified the product as patented. KI Ex. F. In the 2007 catalog, issued after the patent had expired, the entry for the product did not describe it as patented. KI Ex. G. In the 2008 catalog, however, FFR once again described the product as patented, and FFR has continued to do so in every catalog since. KI Exs. H–K.

Finally, KI alleges that FFR's intent to deceive through false patent marking is evidenced by the fact that its catalog and advertising state that it owns more than ninety patents and takes steps to protect its patent rights. KI 3rd Am. Counterclaim ¶ 30.

3

**Discussion**

KI's claim arises under 35 U.S.C. § 292. Section 292(a) currently states, in relevant part:

> Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented for the purpose of deceiving the public; or
>
> Whoever marks upon, or affixes to, or uses in advertising in connection with any article, the words 'patent applied for,' 'patent pending,' or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public—
>
> Shall be fined not more than $500 for every such offense.
>
> Only the United States may sue for the penalty authorized by this subsection.

*Id.* § 292(a). Section 292(b), recently added to the statute, states that "[a] person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury."

"The two elements of a § 292 false marking claim are (1) marking an unpatented article and (2) intent to deceive the public." *Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009). FFR argues that the Court should dismiss KI's false marking counterclaim because it is barred by recent amendments to the false marking statute and because KI has failed to plead intent to deceive with sufficient particularity.

Initially, FFR also argued that the *qui tam* provisions of section 292 were unconstitutional. Because the recent amendment to section 292(a) has eliminated *qui*

4

*tam* actions, the Court need not address this argument.

**1.     Amendments to 35 U.S.C. § 292**

The recently enacted Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125

Stat. 284 (Sept. 16, 2011), made two changes to the false marking statute that are

relevant to this case.[2]  First, it eliminated the *qui tam* provisions of the statute by

providing that only the United States may sue for the civil fine that each false marking

incurs.  35 U.S.C. § 292(a).  As noted earlier, private plaintiff such as KI now may

recover damages only if it "has suffered a competitive injury."  *Id.* § 292(b).

Second, the Leahy-Smith Act eliminates liability concerning products that are

falsely marked because a patent has expired.  New subsection (c) states "The marking

of a product . . . with matter relating to a patent that covered that product but has

expired is not a violation of this section."  Due to this new provision, the Court must

dismiss KI's false marking claim to the extent it concerns products that were once

patented by FFR but no longer were at the time of the false marking because the patent

had expired.

KI argues that section 292(c) was not intended to protect violations like FFR's

but only a more narrow category.  It argues that the Leahy-Smith Act's legislative history

shows that Congress "was concerned with the cost of removing marked products from

commerce or changing the labels after the patent expired."  KI Supp. Br. at 4.  But

courts "need not resort to legislative history when a statute is unambiguous."  *Pequignot*

---

[2]  The Leahy-Smith Act amendments to section 292 "apply to all cases, without
exception, that are pending on, or commenced on or after," September 16, 2011.  Pub.
L. 112-29 § 16(b)(4), 125 Stat. at 329.  KI has not argued that retroactive application of
the amendments to its already-pending claims is improper.

5

*v. Solo Cup Co.*, 608 F.3d 1356, 1361–62 (Fed. Cir. 2010) (refusing to consult legislative history to determine if an earlier version of section 292 covered expired patents). The false marking statute's language, as recently amended, unambiguously provides an exception for any items covered by an expired patent.

## 2.    Sufficiency of pleading

KI's claims that FFR marked items as patented or patent pending when they had never been covered by a patent or were no longer covered by a pending patent application are still allowed under amended section 292. FFR contends, however, that KI has failed to plead intent to deceive with sufficient particularity.

"The bar for proving deceptive intent [in false marking cases] is particularly high . . . . Because the statute requires that the false marker act for the purpose of deceiving the public, a purpose of deceit, rather than simply knowledge that a statement is false, is required." *Pequignot*, 608 F.3d at 1363 (internal quotation marks omitted). For pleading purposes, because section 292 claims "condemn[] fraudulent or false marking," they are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1311 (Fed. Cir. 2011).

Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "Although 'knowledge' and 'intent' may be averred generally, [Federal Circuit] precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen v.*

*Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009).

The primary specific examples that KI identifies in its counterclaim concern products covered by expired patents. Putting those aside, however, KI has alleged facts sufficient to give rise to a plausible inference that FFR knew it had falsely marked unpatented items and that it acted with intent to deceive the public. Ki states that FFR's marketing department is told about the patent status of the products in the catalog, that the department uses this information to decide whether to mark any particular item as patented or patent pending, and that the marketing staff "knew or should have known" the products' patent status because creating FFR's catalog was such a large part of their jobs. KI 3rd Am. Counterclaim ¶ 19–22.

KI also alleges that FFR has chosen to simply list products as patented without including a patent number and that its catalog and advertising state that it has many patents and defends its patent rights. These allegations, combined with the facts suggesting FFR's knowledge of which items were patented, contribute to an inference that FFR falsely marked its products with intent to deceive the public.

KI included with its response to the motion to dismiss an affidavit by Michael A. DeJohn, a former FFR sales executive. The Court may appropriately consider the facts set forth in the affidavit, because "once the plaintiff pleads sufficient factual material to state a plausible claim . . ., nothing . . . precludes the plaintiff from later suggesting to the court a set of facts, consistent with the well-pleaded complaint, that shows that the complaint should not be dismissed." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010).

In his affidavit, DeJohn states that FFR's "marketing department usually was

7

advised by product development personnel as to which products listed in the catalog are patented, patent pending, or no longer patented since the patent covering the product had expired, and also discussed which products might be considered to be patented in the future." DeJohn Decl. ¶ 3. He "belie[ves] that personnel in the marketing and product development departments would know which FFR patents were expired, and the products that were no longer covered by a valid patent or were no longer patent pending." *Id.* ¶ 5. He also states that patent issues were be discussed at the quarterly sales meeting. *Id.* ¶ 6. Because DeJohn left FFR in 2008 (he now consults for KI), he cannot say from personal knowledge that any of the alleged false marking in FFR's 2011 catalog was done deliberately and with intent to deceive the public. *Id.* ¶ 1. But the factual allegations in his affidavit and KI's amended counterclaim give rise to a plausible the inference that FFR's marketing department knew which products were covered by patents. KI has therefore pled sufficient facts to activate the presumption of intent to deceive.

FFR cites numerous cases in which courts dismissed false marking claims that contained insufficient allegations. The allegations in those cases, however, were not as detailed as here and did not provide enough facts to infer intent to deceive. Several cases involved complaints that only alleged that the defendant was sophisticated or had an in-house legal department that monitored patents. *See Meridian Elec. Co. v. Energizer Holdings, Inc.*, No. 11-cv-35-DRH, 2011 WL 2693292, at *1 (S.D. Ill. Jul. 12, 2011) (allegation that defendant was a sophisticated company that used in-house and outside counsel to monitor patents); *Turek v. Merck & Co.*, No. 3:10-cv-00907-MJR,

2011 WL 2470066, at *1 (S.D. Ill. Jun. 20, 2011) (complaint alleged that Merck was a sophisticated company that had an in-house legal department that monitored its patents); *United States ex rel. Alchemy Asset Servs., Inc. v. GlaxoSmithKline Consumer Healthcare, LP*, No. 10-680, 2011 WL 2470595, at *3 (W.D. Pa. May 3, 2011) (allegation that defendant was a sophisticated company and employed numerous patent attorneys); *Buehlhorn v. Marv-O-Lus Mfg. Co.*, No. 10-0567-DRH, 2011 WL 1379814, at *7 (S.D. Ill. Apr. 12, 2011) (complaint alleged that "Defendant has an in-house legal department (or otherwise retains attorneys) that is/are responsible for Defendant's intellectual property."). These decisions largely track *BP Lubricants*, in which the Federal Circuit held that an allegation that a defendant is sophisticated and has patent experience is insufficient to give rise to a plausible inference of intent to deceive. *BP Lubricants*, 637 F.3d at 1312. None of them cases involved allegations as particularized as those that KI has made.

Similarly, the plaintiffs in other cases that FFR cites did not make allegations similar to those in KI's counterclaim. In *Promote Innovation LLC v. Roche Diagnostics Corp.*, No. 1:10-cv-964-TWP-TAB, 2011 WL 2181243 (S.D. Ind. Jun. 3, 2011), the only factual allegations the plaintiff made were that the defendant had licensed the patent and the license agreement probably stated the patent's expiration date. *Id.* at *7. In *Frank's Elec. Serv. v. Phillips Elec. N. Am. Corp.*, No. 11-cv-145-DRH, 2011 WL 2838184 (S.D. Ill. Jul. 18, 2011), the court determined that allegations that Phillips had been involved in a prior lawsuit, its brochures and website threatened litigation, and its annual report indicated that it tracked its patents were not sufficient to create an

9

inference of knowledge. *Id.* at *3. *Hollander v. Hospira, Inc.*, No. 10 C 8151, 2011 WL 1811637 (N.D. Ill. May 12, 2011), involved allegations that Hospira was sophisticated, that it had experience with patents, had a practice of reviewing its patent portfolio, had stated in SEC filings that most of its products were unpatented, and had adjusted the markings on some of its falsely marked products. *Id.* at *1, 4.

Each of the dismissed cases involved allegations that someone, usually an in-house attorney, was in a position to know that certain products were unpatented. But in none of the cases was there a basis for a plausible inference of a connection between that knowledge and knowledge that products were falsely marked, or a plausible inference that the person claimed to have known the products were unpatented had participated in the decision to mark them as patented. By contrast, KI has alleged that the marketing department of FFR knew that various products were unpatented and then nevertheless made the decision to describe the products are patented in its catalog and website. KI does not identify specific individuals, but it cannot be expected to do so at this early stage of the proceedings. *See Luka v. Proctor and Gamble Co.*, 785 F. Supp. 2d 712, 718 (N.D. Ill. 2011) (citing *BP Lubricants*, 637 F.3d at 1312).

FFR also argues that KI has not sufficiently alleged prohibited false marking related to the products that it did not discuss in the body of its counterclaim but only listed in two exhibits. The Court concludes that the lists, combined with the allegations in the counterclaim, are sufficient. The exhibits sufficiently allege that FFR has marked unpatented items. For example, KI's list sufficiently alleges that FFR's catalog falsely describes the "Data Strip Supergrip Label Holder for Shelf Channel" as patented. KI Ex. AA. KI provides the name of the product, the item numbers, and the page of FFR's

10

catalog on which the product appears. *Id.* KI also alleges that the product is "[n]ot covered by an FFR patent." *Id.* As discussed above, the body of KI's counterclaim sufficiently alleges that FFR's marketing department knew that the product was unpatented and, with intent to deceive, described it in the catalog as patented.

## 3.     Competitive injury

Finally, FFR argues that KI has not alleged that it suffered any competitive injury and that under amended section 292, KI can recover damages only to compensate for a competitive injury. The Court agrees with KI's contention that it has alleged competitive damages by stating that FFR's false marking "is likely to, or at least has the tendency to, discourage and deter persons and companies, such as K International, from commercializing competing products and deters consumers from using competing products." KI 3rd Am. Counterclaim ¶ 35.

## Conclusion

For the reasons stated above, the Court grants FFR's motion to dismiss KI's counterclaim in part and denies it in part [docket no. 72]. The Court dismisses Count 1 of KI's third amended counterclaim to the extent it concerns products covered by expired patents. The Court also strikes KI's request for civil fines under 35 U.S.C. § 292(a). The Court otherwise denies the motion.

MATTHEW F. KENNELLY
United States District Judge

Date:  October 28, 2011

11