**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FASTENERS FOR RETAIL, INC., | |
| Plaintiff, | |
| v. | No. 11 C 2164 |
| GERALD ANDERSEN and K INTERNATIONAL, INC., | Judge Thomas M. Durkin |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

On March 29, 2011, Fasteners for Retail, Inc. ("FFR") brought an action against K International ("Kinter") and Gerald Andersen alleging patent infringement, false advertising under the Lanham Act, violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, unfair competition, and trade secret misappropriation. R. 1. While that action was pending in this Court, FFR filed an action in Ohio state court against several of its former employees who are currently employed by Kinter, and subsequently sought to amend that complaint to add Kinter as a defendant. *See Fasteners for Retail, Inc. v. DeJohn*, CV-12-786894 (Ct. C.P. Cuyahoga Cnty. Ohio). By written agreement dated February 11, 2013 (the "Settlement Agreement"), FFR and Kinter agreed to settle both the action in this Court and the potential action in Ohio. R. 234-1. The next day, the parties jointly moved to dismiss the action in this Court, R. 221, and the case was dismissed. R. 222. The Ohio action remains pending against FFR's former employees.

In the Ohio action, FFR now seeks to depose Kinter and several of its executives regarding work performed for Kinter by the former FFR employees who FFR has sued in Ohio. Kinter objects to the depositions contending that the terms of the Settlement Agreement preclude FFR from taking any future discovery from Kinter. FFR moves to have the Court decide whether the Settlement Agreement precludes FFR from seeking discovery from Kinter in general, and the depositions FFR seeks in the Ohio action in particular. R. 245; R. 250.[1]

Additionally, FFR contends that Kinter failed to comply with a provision of the Settlement Agreement that required Kinter to produce a declaration listing the "products sold by Kinter (and revenues and gross profits on those products) on which Kump"—one of FFR's former employees—"consulted on behalf of Kinter." R. 234 at 5-6; R. 239 at 2-4. Kinter produced a declaration purporting to satisfy this provision, *see* R. 234-1 at 220-21, but FFR argues that documents produced during the course of the Ohio action demonstrate that the declaration Kinter produced was incomplete. FFR moves to have the Court enforce this provision of the Settlement Agreement and require Kinter to produce a complete declaration. R. 225; R. 234.

FFR also contends that the documents produced in the Ohio action demonstrate that Kinter impermissibly withheld documents related to Kump's work during the litigation in this Court after the Court granted FFR's motion to compel

---

[1] The Settlement Agreement provides that this Court will have exclusive jurisdiction over any dispute related to the interpretation or enforcement of the Settlement Agreement. *See Muzumdar v. Wellness Int'l Network*, 438 F.3d 759, 762 (7th Cir. 2006) (forum selection clauses will be enforced where venue is specified with exclusive language).

these documents. On this basis, FFR moves to have the Court "allow FFR the option to make a request for additional relief relating to Kinter's discovery violations in the [litigation in this Court]." R. 234 at 10; R. 225 at 10.

For the following reasons, the Court grants FFR's motions to the extent that the Court finds that (1) the Settlement Agreement does not preclude the depositions FFR seeks; (2) the Settlement Agreement does not preclude the parties from seeking discovery from each other in the Ohio action or any future litigation; and (3) Kinter must produce a complete declaration as required by § 6(c) of the Settlement Agreement in accordance with the Court's interpretation of that section.

**I.     Relevant Settlement Agreement Provisions**

The Settlement Agreement provides the following in relevant part:

> WHEREAS, the Parties . . . have determined that it is in their best interests to resolve the differences between them by compromise and settlement of the claims and causes of action that were or could have been asserted against each other by FFR and/or Kinter in the Illinois Action and the Ohio Action . . . .
>
> \*     \*     \*
>
> 2.     <u>FFR Release of Kinter</u>. In consideration of the mutual covenants executed herein, the sufficiency of which is hereby acknowledged, and upon full execution of this Agreement, FFR for itself, its predecessors, successors, assigns, subsidiaries, affiliates, parents, divisions, owners, current officers, agents, employees and consultants (the "FFR Releasors"), do hereby irrevocably, unconditionally and forever release, acquit, and discharge Kinter, its predecessors, successors, divisions, subsidiaries, parents, and affiliates, and their current officers, directors, shareholders, owners, employees, servants, agents and attorneys, of and from any and all action, lawsuit, cause of action, suit, injury, damage,

claim, attorney's fees and/or liability or obligation of any kind, name, and nature whatsoever, whether at law or equity, which FFR has or may have against Kinter. Notwithstanding the foregoing, the release granted by FFR Releasors does not release any claims that FFR Releasors may have against Daniel Kump, Michael DeJohn, Bruce Hrvatin, Gary Andersen and any other persons formerly employed by FFR.

\* \* \*

5. <u>Withdrawal of Motion to Amend in the Ohio Action</u>. FFR shall withdraw its Motion for Leave to Amend the Complaint, filed January 4, 2013 in the Ohio Action within 14 days of the effective date of this Agreement.

6. <u>Former FFR Employees</u>. . . . (c) Kinter further represents and warrants that it has provided or will provide a sworn Declaration on or before January 31, 2013 listing products sold by Kinter (and revenues and gross profits on those products) on which Kump consulted on behalf of Kinter. FFR will be allowed to use that Declaration in the Ohio Action.

\* \* \*

13. <u>Amendment of Protective Order</u>. . . . Kinter agees that the document for which the "highly confidential" designation was removed in advance of the January 22, 2013 mediation . . . may be used on a "Confidential" basis in the Ohio Action and any related action. Kinter further states that it does not object to the use of the transcripts of the depositions of Dan Kump and Michael DeJohn in the Ohio Action and any related action on a "Confidential" basis (until any findings by the court in the Ohio Action that those transcripts are not confidential).

14. <u>Deposition Transcripts Designated as Attorneys Eyes Only</u>[.] . . . [F]or the purpose of clarification only with respect to the transcripts of deposition of DeJohn and Kump taken in the Illinois Action, Kinter and Defense Counsel in their capacity as counsel for Kinter further state that by agreeing to this Settlement, signing this Settlement Agreement and/or dismissing the Illinois

> Action, they specifically do not object to, and withdraw all objections to, the use of those deposition transcripts of Kump and DeJohn in the Ohio Action and any related action on a "Confidential" basis (until any finding by any court that those transcripts are not confidential).

R. 234-1 at 207-13.

## II. Depositions and Discovery in the Ohio Action

Kinter argues that "[t]he language recited in [§ 2 of] the Settlement Agreement," releasing Kinter from any "obligation of any kind, name, and nature whatsoever," is "expansive such that it includes a release from any obligation to participate in discovery for the Ohio Litigation," R. 257 at 7, and means that "FFR has given up its right to conduct discovery of Kinter." *Id.* at 2. The Court does not agree that the word "obligation" is used in the Settlement Agreement with meaning expansive enough to include FFR's "right to conduct discovery." Rather, applying the "commonsense canon of *noscitur a sociis*," the meaning of the word "obligation" in the settlement agreement "is given more precise content by the neighboring words with which it is associated." *See Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2042 (2012). The word "obligation" appears in § 2 of the Settlement Agreement at the end of a list of terms describing that from which FFR has released Kinter. R. 234-1 at 208. All of these terms describe either the basis for, or the process of, initiating litigation (i.e., action, lawsuit, cause of action, suit, injury, damage, claim), or the consequence of losing in litigation (i.e., attorney's fees, liability). The Settlement Agreement groups "obligation" with "attorney's fees" and "liability"—both forms of relief sought in litigation. Although "obligation" can have a

5

broad connotation akin to the word "rights," "obligation" also has a narrower connotation of "the duty of a borrower to repay a loan." *See Oxford English Dictionary*, www.oed.com. Notably, Black's Law Dictionary, Second Edition, defines "liability"—one of the other terms the Settlement Agreement groups with "obligation"—as a "financial or pecuniary *obligation*" (emphasis added), and "attorney's fees" are obviously monetary in nature. In the context of the Settlement Agreement, the meaning of "obligation" is limited to obligations associated with relief sought in litigation. Thus, the Settlement Agreement does not preclude the depositions FFR seeks.

Kinter argues that "obligation" must include the right to discovery—including the depositions FFR seeks—because the Settlement Agreement relieves Kinter of obligations "of any kind, name, and nature whatsoever." R. 257 at 7-8. Although the word "any" has an "expansive" meaning, it can "never change in the least, the clear meaning" of the text, *see Freeman*, 132 S. Ct. at 2042, and Kinter takes this phrase out of context. The phrase Kinter relies on is immediately followed by the phrase, "whether at law or in equity," R. 234-1 at 208—invoking the two historical forms of relief granted by courts. The phrase "whether at law or in equity" qualifies the word "obligation" and all the other terms preceding it such that the kind of "obligations" contemplated by the Settlement Agreement are obligations in the form of relief sought in litigation. Under the Settlement Agreement, "obligations" does not include the right to take discovery in the future.

Not only is Kinter's argument that "obligation" should be interpreted to include the right to discovery belied by the specific textual context, the argument is incongruous with the general purpose of the Settlement Agreement. The preamble expressly states that the parties "have determined that it is in their best interests to resolve the differences between them by compromise and settlement of the claims and causes of action that were or could have been asserted against each other by FFR and/or Kinter in the Illinois Action and the Ohio Action." R. 234-1 at 207. This language specifically states that the parties intend to release each other from "claims and causes of action" and does not mention discovery rights at all. There is no justification for the Court to read such an intent into the Settlement Agreement.

Looking beyond the text of the Settlement Agreement, Kinter argues that an expansive interpretation of the word "obligation" is supported by the Ninth Circuit's decision in *Dart Industries Co., Inc. v. Westwood Chemical. Co., Inc.*, 649 F.2d 646, 650-51 (9th Cir. 1980). In *Dart*, the Ninth Circuit held that when the defendant released the plaintiff "of any rights it has or may hereafter have by reason of conspiracy alleged by [the defendant]," the defendant "gave up far more than its right of discovery against [the plaintiff]. It gave up everything." *Id.* at 648. The Ninth Circuit affirmed the district court's holding that this language meant that the defendant "released any right to engage in discovery against [the plaintiff]." *Id.*

In *Dart*, however, the word "rights" was the only word the parties used to describe the substance of the release. Although certain uses of the words "right" and "obligation" are synonymous, as the Court has discussed, FFR and Kinter used the

7

word "obligation" in the context of other words indicating that the intended meaning of "obligation" was limited to consequences of litigation. Moreover, several courts (including the Sixth Circuit) have disagreed with *Dart's* holding and reasoning that a "general release" of claims—which commonly forms the heart of a settlement agreement—includes a release of the right to take discovery. *See Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1231 (6th Cir. 1981); *In re Babcock Borsig AG*, 583 F. Supp. 2d 233, 237 (D. Mass. 2008); *Tag Group S.A. v. Haas and Haynie Corp.*, 637 F. Supp. 121, 123-24 (S.D.N.Y. 1986); *Isetts v. Borough of Roseland*, 835 A.2d 330, 337 (N.J. App. Div. 2003). Instead, these courts held that a settlement agreement must expressly release discovery rights in order to preclude future discovery between the parties to a settlement agreement. Since the settlement agreement here does not expressly release FFR's right to take discovery from Kinter, there is no basis to read such intent into the agreement.

Kinter, however, argues that the settlement agreement describes limitations on any future discovery the parties might desire to take from each other. *See* R. 257 at 4-7 (citing Settlement Agreement §§ 13-14). But the settlement agreement provisions Kinter cites are titled "Amendment of Protective Order" and "Deposition Transcripts Designated as Attorneys Eyes Only." These provisions clearly serve to amend the protective order in effect during the litigation in this Court to permit certain discovery covered by the protective order to be used in the Ohio litigation. Nothing in these provisions contemplates an ongoing prohibition of discovery between FFR and Kinter in general.

## III. The Declaration Required by § 6(c) of the Settlement Agreement

Section 6(c) of the Settlement Agreement required Kinter to produce "a sworn Declaration . . . listing products sold by Kinter (and revenues and gross profits on those products) on which Kump consulted on behalf of Kinter." R. 234-1 at 210. Kinter produced a declaration from its comptroller, Kevin White, that it claims complies with that section of the Settlement Agreement. *See* R. 234-1 at 220-21. FFR contends, and Kinter does not dispute, that a number of products "sold by Kinter" and "on which Kump consulted on behalf of Kinter" were not included in the White declaration. *See* R. 234 at 5-6; R. 233 at 4-6.

Kinter argues that it permitted to exclude the products FFR identifies from the White declaration because the Settlement Agreement only required it to produce a list of "products sold by Kinter for which sales could be traced to Mr. Kump's assistance in developing and/or marketing the products." R. 233 at 4. Kinter argues that sales of the products FFR identifies could not be "traced to Mr. Kump's assistance." Kinter, however, offers no basis for its contention that this is the true meaning § 6(c). Instead, § 6(c) is abundantly clear on its face in requiring Kinter to produce a declaration listing the products it "sold" and "on which Kump consulted." Contrary to Kinter's implication that § 6(c) is ambiguous and requires interpretation with reference to the context of the litigation, there is no basis to limit the products included in the declaration to those for which sales can be "traced to Mr. Kump's assistance." Kinter's failure to include in the White declaration products which it "sold" and "on which Kump consulted" means that the White

9

declaration does not comply with § 6(c). Kinter must produce a new sworn declaration that complies with the plain language of § 6(c) of the Settlement Agreement.[2]

**Conclusion**

For the foregoing reasons, FFR's motions, R. 225; R. 234. R. 245, are granted in that the Court finds that (1) the Settlement Agreement does not preclude the depositions FFR seeks; (2) the Settlement Agreement does not preclude the parties from seeking discovery from each other in the Ohio action or any future litigation; and (3) Kinter must produce a complete and accurate declaration as required by § 6(c) of the Settlement Agreement as the Court has interpreted that section in this Opinion.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: August 22, 2014

---

[2] FFR also argues that Kinter failed to comply with the Court's order to produce documents relevant to Kump's work during the course of the litigation in this Court. R. 234 at 6-9. FFR, however, has not sought any specific relief on the basis of this argument. Rather, it only asks the Court to "allow FFR the option to make a request for additional relief relating to Kinter's discovery violations in the Kinter Action." R. 234 at 10. This request is moot because FFR has never been barred from seeking any form of relief in this Court, so FFR does not need the Court's permission to seek "additional relief." To the extent that FFR makes a motion in the future for some specific "additional relief" with respect to the discovery taken in this Court, the Court will consider the request at that time.

10